IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 19, 2022

## GAINES RICHARDSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 14-04610     Paula L. Skahan, Judge**

_____

### No. W2021-00981-CCA-R3-PC

_____

The Petitioner, Gaines Richardson, appeals the denial of post-conviction relief from his convictions for aggravated robbery, asserting that he received ineffective assistance of trial counsel and that the evidence was insufficient to establish his convictions. After review, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined, and JOHN EVERETT WILLIAMS, P.J., (not participating).[1]

Skylar Beasley (on appeal), Memphis, Tennessee, and Harold Dorsey (at hearing), Alamo, Tennessee, for the Petitioner, Gaines Richardson.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Samuel Winnig, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The charges in the instant case arose from the April 1, 2014 aggravated robbery of the victims, Winton Burrell and Tarreka Anderson. State v. Gaines Richardson, No. W2017-01102-CCA-R3-CD, 2018 WL 4182317, at *1 (Tenn. Crim. App. Aug. 30, 2018), perm. app. denied (Tenn. Jan. 18, 2019). A Shelby County Grand Jury indicted the Petitioner and his co-defendant, Javon Ponder, for two counts each of aggravated robbery, and they were convicted as charged following a jury trial. Id. at *2. The trial court sentenced the Petitioner to concurrent nine-year sentences for each count. Id. On direct appeal, the Petitioner alleged that the evidence was insufficient to support his convictions

---

[1] The Honorable John Everett Williams passed away on September 2, 2022, and did not participate in this opinion. We acknowledge his faithful service to this Court.

and that he was entitled to plain error relief for a multitude of reasons, including an improper opening statement by the State. Id. at *2, *4. This court recited the facts of the case on direct appeal:

Winton Burrell is a licensed car dealer and operates his business out of his home. Mr. Burrell is on disability for a heart condition, but every tax season, Mr. Burrell sells some cars and, as a result, has large amounts of cash in his house. Mr. Burrell received a call from co-defendant, about purchasing a vehicle. During their discussion about the vehicle purchase, co-defendant agreed to get some money together and meet Mr. Burrell the next morning, April 1, 2014. Before noon on April 1st, co-defendant called Mr. Burrell and stated that he and "his cousin" were going to pick up the truck, a Ford F-150. When the men arrived, Mr. Burrell met them outside, showed them the truck, and walked inside to get the title at their request. Mr. Burrell recounted that once he had the title, "the next thing [he knew, he] had a gun pointed in [his] face by [the Petitioner]." [The Petitioner] continued to hold Mr. Burrell at gunpoint as he pushed Mr. Burrell through the house and into Mr. Burrell's bedroom.

Inside his bedroom, Tarreka Anderson, Mr. Burrell's fiancée, awoke to the sound of the commotion. She remembered awaking to the sight of a man, later identified as [the Petitioner], pointing a gun at Mr. Burrell's face and asking where he could find the money. Ms. Anderson initially thought it was a joke and talked "crazy" to both of them because it was April Fool's Day. When [the Petitioner] pointed a gun at her and told her to "shut the 'F' up," she realized it was not a joke. Once [the Petitioner] pushed Mr. Burrell in the bedroom, [the Petitioner] took $6500 in cash that Mr. Burrell claimed he had set out on the ironing board in preparation for an automobile auction later in the day. Ms. Anderson said that [the Petitioner] found the cash in some shoeboxes. At any rate, [the Petitioner] ordered Mr. Burrell to lie down, and Mr. Burrell laid down in a manner which he thought would protect Ms. Anderson, who was pregnant with Mr. Burrell's child at the time. Once Mr. Burrell was lying down, [the Petitioner] asked where the rest of the money was located and rummaged through the shoeboxes in Mr. Burrell's bedroom. [The Petitioner] said, "you better not get your ass up" and exited the room.

After [the Petitioner] and co-defendant left, Mr. Burrell surveyed the house and noticed other things were missing. Mr. Burrell recalled that money, a PlayStation 4, games, a DVD, shoes, bags of medicine, keys to the car, keys to the house, cellphones, and a car radio were taken from the house.

According to Ms. Anderson, they took "two or three pair[s] of Air Jordan tennis shoes," "a Play Station 4," and "a lot of DVDs," which belonged solely to her.

Mr. Burrell could not call the police immediately because his phone had been taken. Ms. Anderson and Mr. Burrell looked up [the Petitioner] and co-defendant on Facebook because they wanted to know their full names before they called the police. Once he had access to a phone, Mr. Burrell called the police and reported the robbery. The recording begins by giving the date and time as "Tuesday, April 01, 2014 at 3:58:55 p.m." In the recording, Mr. Burrell states that he had been robbed at gun point and gives the full names of [the Petitioner] and co-defendant over the phone to the 911 operator. However, Mr. Burrell testified that he met [the Petitioner] for the first time on April 1st.

Mr. Burrell recounted that a police officer came to his house. Mr. Burrell used Facebook to look up pictures and show the police pictures of co-defendant. The police officer gave Mr. Burrell and Ms. Anderson instructions to come to the police station for a photographic lineup at a later date. In the time between the crime and the photographic lineup, Ms. Anderson gave birth. She remained in the hospital for two days, and the child remained in the hospital for two weeks.

Lieutenant Shawn Hicks of the Memphis Police Department investigated the instant case. Once the case was handed off to him, he contacted Mr. Burrell and Ms. Anderson by phone to talk to them about the case. Even though Lieutenant Hicks had names for the two suspects, he created a photographic lineup to confirm the identification. When making the photographic lineup, Lieutenant Hicks retrieved a picture of [the Petitioner] and co-defendant and placed them in separate lineups with photographs of other individuals that looked similar. Before administering the photographic lineup, Lieutenant Hicks had both Mr. Burrell and Ms. Anderson review the "Advice to Witness Viewing a Photographic Display" document. He explained to them the contents of the document and its instructions. After each victim signed the document, Lieutenant Hicks separated Mr. Burrell and Ms. Anderson and had them independently review the photographic lineups. Both victims identified [the Petitioner] and co-defendant. Subsequent to this identification, Lieutenant Hicks obtained an arrest warrant for [the Petitioner] and co-defendant. Mr. Burrell and Ms. Anderson identified Defendant and co-defendant in the courtroom.

However, Ms. Anderson was unable to describe the clothing co-defendant was wearing because she did not have on her glasses.

Gaines Richardson, 2018 WL 4182317, at *1-2. This court ultimately affirmed the Petitioner's convictions after concluding that the evidence was sufficient to support his convictions and that he was not entitled to plain error or cumulative error relief. Id. at *1.

On December 30, 2019, the Petitioner filed a petition for post-conviction relief with assistance from post-conviction counsel, alleging that he received ineffective assistance of counsel due to trial counsel's failure to file certain pre-trial motions, failure to communicate with the Petitioner, failure to advise the Petitioner of his rights at trial, failure to properly investigate the Petitioner's case, failure to meaningfully cross-examine the State's witnesses, failure to object to the State's opening statement, and failure to make any objections during trial. The post-conviction court held a two-day evidentiary hearing on May 6 and May 19, 2021.

At the hearing, trial counsel testified that he was unable to locate his trial case file and therefore had not reviewed it prior to the post-conviction hearing. He agreed that the Petitioner and his co-defendant were both represented by counsel during trial, which took place over four days. After reviewing the transcript of his opening statement, trial counsel testified that the "main defense" at trial was the credibility of the victims. Trial counsel further testified that his cross-examination of Burrell attacked his credibility by establishing that Burrell was a "tax cheat" who had an income that he failed to report to the Internal Revenue Service or to the Social Security Administration. He agreed that Burrell gave inconsistent statements regarding where the Petitioner and the co-defendant obtained money from in his home and that he did not address the inconsistency in his cross-examination of Burrell or in his closing statement. Trial counsel testified that his closing argument focused on Burrell appearing "fundamentally dishonest[.]" He agreed that he also addressed Anderson's lack of credibility but not any specific inconsistencies in her trial testimony. Trial counsel further agreed that Burrell gave inconsistent testimony regarding whether he or Anderson actually called 911 and which phone was used to do so. He did not remember whether the Petitioner ever told him that Burrell "fronted" him drugs and then became angered when the Petitioner "didn't pay him back fast enough[.]"

Trial counsel testified that he did not meet with the Petitioner "as much as [he] would have liked" and that the Petitioner only told him, "It's bull****[,] man" regarding his charges. Trial counsel had "very few" conversations with the Petitioner and believed that the Petitioner only came to his office one time, even though trial counsel "kept trying to get him to come to [trial counsel's] office and meet with [him] and discuss the case[.]" Trial counsel testified that he asked the trial court for a continuance on the morning of trial because he was unprepared due to the Petitioner's failure to meet with trial counsel. Trial

- 4 -

counsel made "several phone calls" to the Petitioner in an attempt to meet with him. He agreed that the trial court did not grant a continuance. Trial counsel agreed that he had practiced law for over ten years at the time of trial and that he had done several jury trials prior to the Petitioner's. He disagreed that he "didn't try at all" during the Petitioner's trial. Trial counsel agreed that although Burrell gave inconsistent statements regarding whether he was inside or outside his house when the Petitioner "pull[ed] the gun" on him, trial counsel did not address that inconsistency. Trial counsel believed he did not address the inconsistency regarding where the money was located in Burrell's house because it was not "that glaring of an inconsistency." He disagreed that inconsistencies should always be pointed out because he did not know if doing so was "always valuable." Trial counsel agreed that he did not object to anything during trial. He did not address the lack of fingerprint or DNA evidence because the case did not "seem to be the kind of case to have a DNA component."

Trial counsel did not ask Anderson about the robbery itself during cross-examination but did elicit that she had a pending drug charge at the time of trial. He did not recall the Petitioner or his girlfriend, Chloe Mann, ever asking him to obtain Burrell's phone records to show that Burrell knew the Petitioner prior to the robbery. He agreed that he did not ask Burrell, Anderson, or Lieutenant Hicks how they knew the Petitioner's name. He further agreed that he did not ask Lieutenant Hicks how he knew to include the Petitioner's photograph in the lineup he created for Burrell and Anderson. Trial counsel explained that he pursued Burrell being a drug dealer, Anderson's pending drug charge, and the large amounts of cash in the house instead of asking about the robbery itself. He agreed that he did not file "any sort of pretrial motions[.]" Trial counsel did not have any "prep" meetings with the Petitioner outside of court. He did not specifically remember giving discovery materials to the Petitioner but explained that he "ma[d]e it a point to give all [his] clients discovery[.]" He also did not specifically remember discussing the "pros and cons" of the Petitioner testifying at trial with him but was "sure" that he did because he "always" advised his clients of such. Trial counsel testified that to prepare for trial, he "went over the discovery, took notes on it, thought it through, drafted questions, [and] thought about it[.]" He was unsure how much time he spent preparing for trial but was sure he spent "more than five hours on this case." Trial counsel testified that he did not represent the Petitioner at his preliminary hearing and did not obtain the transcript from the hearing or utilize it during trial.

On cross-examination, trial counsel agreed that the victims identified the Petitioner at the preliminary hearing and that only three witnesses testified during trial. He further agreed that the Petitioner's co-defendant also had counsel who examined the witnesses and made an opening and closing statement. Trial counsel agreed that the co-defendant's counsel also took the position that Burrell "was a liar and a drug dealer and someone not to be trusted" and that the co-defendant's counsel's questions and opening and closing

statements attacked Burrell's credibility. He reiterated that he had tried several felony cases prior to the Petitioner's trial. Trial counsel agreed that he reviewed discovery, made notes, identified any troublesome parts of the case, mapped out questions for the witnesses, and thought about his opening and closing statements. He explained that during his initial meeting with the Petitioner, he typically would have discussed the case history and the Petitioner's history. Trial counsel reiterated that he did not recall the Petitioner telling him anything about the case other than it being "bull****[.]" He agreed that there were approximately thirteen report dates in court prior to trial and that he would have met with the Petitioner on those dates. He further agreed that "at some point [he] had a significant enough conversation" with the Petitioner to relay an offer from the State, though he did not specifically recall the offer.

Trial counsel thought it was possible that the Petitioner had indicated he wanted to hire a new attorney and that the trial court did not grant additional time to do so. He testified that the Petitioner would not come to his office, despite calling the Petitioner "at least once a month" and with "increasing frequency as the time for trial grew nearer." He did not remember Mann telling him that the Petitioner and Burrell had text or voicemail conversations prior to the robbery and agreed that such a revelation would have "stuck out" in his mind. Trial counsel explained that his typical practice when given evidence by his clients was to examine the evidence himself to determine if it was actually important. He stated that he and the co-defendant's counsel were "working together ultimately" because they had "a similar story." Trial counsel agreed that he elicited on cross-examination that Burrell was a drug dealer who cheated on his taxes and lied to the Social Security Administration and that he attacked Burrell's credibility in his closing argument. He further agreed that it was "harder to attack" Anderson's credibility because she was pregnant at the time of the robbery but that he successfully pointed out that Anderson and Burrell were "partners in crime[.]"

Trial counsel agreed that all of the inconsistencies mentioned by post-conviction counsel on direct examination were put before the jury by the co-defendant's counsel at trial and were discussed by this court in its sufficiency of the evidence analysis on direct appeal. He further agreed that he continued to prepare for trial despite the lack of communication from the Petitioner and that he asked the trial court for a continuance in an attempt to actually speak to the Petitioner. Trial counsel testified that it was his practice to object when he "ha[d] something to object to that [wa]s serious and worthwhile." He elaborated that he would object to anything that was "substantial" or "germane to the case" but did not "object just for the sake of objecting and interrupting someone's train of thought." With respect to the co-defendant's counsel's objections, trial counsel explained that he typically "let [counsel] make the objections" if "someone ma[de] more objections than [him]." Trial counsel testified that he was "pointing out that [Burrell] was showing

through testimony that he was a drug dealer" and that "they had limited income and yet, big stacks of money on the ironing board."

On redirect examination, trial counsel agreed that he told the trial court he was not ready for trial on the morning of trial, but the trial still proceeded as scheduled. He further agreed that he was not ready for trial because he had not talked to the Petitioner. Trial counsel testified that he tried to locate the Petitioner's case file in his attic but was unable to find it. He clarified that he was "as prepared as [he] could be without [the Petitioner's] help."

On recross-examination, trial counsel testified that there were no witnesses he was unable to call, no evidence he was unable to present, and no cross-examination he was unable to pursue, despite telling the trial court he was unprepared. He agreed that he was able to communicate with the Petitioner at his thirteen report dates and during trial but explained that he "would have been a lot more comfortable going to trial" if the Petitioner had met with him. On further redirect examination, trial counsel testified that he did not specifically remember talking to the Petitioner about his case during the thirteen report dates but stated, "I mean what else would we talk about[?]"

Chloe Mann testified that she was the Petitioner's "significant other" and that they had lived together before he "went into custody[.]" Mann testified that a different attorney represented the Petitioner at the preliminary hearing. She agreed that she paid money out of her own pocket to trial counsel and maintained contact with him twice a week and more frequently leading up to trial. Mann testified that she was present for a conversation in a hallway outside of court between trial counsel and the Petitioner regarding the facts of the case. She did not ever hear the Petitioner give trial counsel "his version" of what occurred during the robbery. Mann described trial counsel as "not cooperative" and stated that trial counsel and the Petitioner "got into some kind of altercation[,]" and she was "in the process of hiring another lawyer[.]"

On cross-examination, Mann testified that she and the Petitioner asked trial counsel to highlight Burrell's and Anderson's inconsistent statements at trial, but trial counsel "never brought that up[.]" She agreed that trial counsel had "some conversation" with the Petitioner regarding the "set of facts that he claimed were the actual facts[.]" Mann also spoke with trial counsel about the facts of the case. She asked trial counsel to visit the Petitioner while he was in custody "for about six weeks," but he did not. Both Mann and the Petitioner had conversations with trial counsel via text message. Mann testified that while the Petitioner was in custody prior to trial, she visited him and relayed information he told her to trial counsel at his office on three occasions. She did not recall whether the Petitioner went to see trial counsel at his office prior to trial but did recall them having

conversations in the hallway over the course of trial. Mann remembered trial counsel and the Petitioner having "a little verbal spat."

On redirect examination, Mann testified that she did not remember trial counsel trying to contact the Petitioner via telephone because they got into a "verbal spat" over the Petitioner's payment for trial counsel's services. She was unsure when the "spat" occurred but knew it was prior to trial. Mann reiterated that she did not think trial counsel contacted the Petitioner in the weeks before trial.

On recross-examination, Mann testified that she believed the Petitioner would have told her if trial counsel tried to contact him but conceded that she was not with the Petitioner "every single minute[.]" She stated that she "took possession" of the Petitioner's cell phone after he was convicted at trial. On further redirect examination, Mann testified that she went through the Petitioner's phone and did not see text messages or calls from trial counsel.

The Petitioner did not testify at the hearing. The post-conviction court denied the Petitioner's petition by written order on July 27, 2021. In denying the petition, the post-conviction court found that the Petitioner "failed to meet his burden and prove by clear and convincing evidence that [t]rial [c]ounsel's performance was deficient or to show that this performance prejudiced the outcome of [the] Petitioner's trial." The Petitioner filed a timely notice of appeal on August 26, 2021.

## ANALYSIS

On appeal, identical to his petition, the Petitioner asserts that he received ineffective assistance of counsel, specifically due to trial counsel's failure to file certain pre-trial motions, failure to communicate with the Petitioner, failure to advise the Petitioner of his rights at trial, failure to properly investigate the Petitioner's case, failure to meaningfully cross-examine the State's witnesses, failure to object to the State's opening statement, and failure to make any objections during trial. He further asserts that the evidence was insufficient to support his convictions.[2] The State responds that the Petitioner "failed to even argue, let alone meet his burden of establishing, deficiency or prejudice for any of these claims" and that sufficiency of the evidence claims are not cognizable in post-conviction proceedings. We agree with the State.

---

[2] Original post-conviction counsel, who did not represent the Petitioner at the evidentiary hearing, was permitted to withdraw from representation by order of this court on January 25, 2022, after she submitted her appellate brief to this court. New post-conviction counsel was subsequently appointed and filed a supplemental brief on May 6, 2022. Our opinion utilizes the supplemental brief filed by new post-conviction counsel.

- 8 -

As an initial matter, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). In addition, Tennessee Rule of Appellate Procedure 27 provides that an appellant's brief must contain, among other requirements, arguments containing citations to authorities and references to the record. Tenn. R. App. P. 27(a). Moreover, if a brief fails to comply with the Tennessee Rules of Appellate Procedure, this court may strike the brief, require a new brief to be filed within a fixed period of time, and impose costs to the offending party responsible for the brief. Tenn. Ct. Crim. App. R. 10(a). Although we agree with the State's categorization of the Petitioner's brief as "a series of conclusory paragraphs" that provide little, if any, actual argument, we nevertheless address the Petitioner's issues on appeal.

**I. Ineffective Assistance of Counsel.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents mixed questions of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). A post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, we generally defer to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Mobley, 397 S.W.3d at 80 (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)). However, we review a post-conviction court's application of the law to its factual findings de novo without a presumption of correctness. Id. (citing Grindstaff, 297 S.W.3d at 216; Finch v. State, 226 S.W.3d 307, 315 (Tenn. 2007); Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006)).

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) this deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v.

Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Id.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369). Nevertheless, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House, 44 S.W.3d at 515 (quoting Goad, 938 S.W.2d at 369).

**Failure to File Pre-Trial Motions.** The Petitioner argues that trial counsel was ineffective in failing "to file certain pre-trial motions." He concedes that the issue was never raised during the post-conviction hearing and that trial counsel did not testify regarding such a claim. The post-conviction court found that the Petitioner had not his burden in establishing that trial counsel was ineffective for failing to file "certain" pre-trial motions because the issue was not raised during the hearing and trial counsel did not testify about pre-trial motions. During the hearing, post-conviction counsel asked trial counsel whether he filed "any sort of pretrial motions" regarding the photographic lineup compiled by Lieutenant Hicks, to which trial counsel responded in the negative, but otherwise did not question trial counsel about pre-trial motions. The Petitioner did not assert what motions trial counsel should have filed or how any motions would have affected his trial. Because the Petitioner has not shown that trial counsel's failure to file pre-trial motions

was deficient or that such an alleged deficiency resulted in prejudice, he is not entitled to relief.

**Failure to Communicate with the Petitioner.** The Petitioner next argues that trial counsel was ineffective due to the "lack of communication that took place before trial[.]" The post-conviction court found that trial counsel was not ineffective because he "made a good faith effort to meet with the Petitioner" prior to trial and did meet with him prior to trial "at least once[.]" Trial counsel's testimony, which was implicitly accredited by the post-conviction court, showed that the Petitioner did not respond to trial counsel's repeated attempts to communicate with him and that the Petitioner told him only that the charges were "bull****[.]" Further, trial counsel testified that he met with the Petitioner approximately thirteen times during his report dates. Mann testified that both she and the Petitioner communicated with trial counsel via text message. Nothing in the record preponderates against the post-conviction court's implicit accreditation of trial counsel's testimony that he made every effort to communicate with the Petitioner. See Calvert, 342 S.W.3d at 485. The Petitioner has failed to establish that trial counsel was ineffective in communicating with him and, accordingly, is not entitled to relief.

**Failure to Advise the Petitioner of Rights.** The Petitioner asserts that trial counsel was ineffective in failing to "advise [the Petitioner] of his rights[,]" noting that he is "entitled to be fully informed of his rights and given advice from trial counsel before trial." The post-conviction court found that trial counsel "did advise [the] Petitioner of all his rights at trial" and therefore "did not provide ineffective of assistance of counsel." The post-conviction court further found that the Petitioner "had not met his burden[.]" At the post-conviction hearing, trial counsel testified that he discussed the "pros and cons" of testifying at trial with the Petitioner. The Petitioner generally asserts that "[i]f [the Petitioner] fails to be informed by his trial counsel, his constitutional rights are abridged." He does not assert which rights trial counsel did not discuss with him or how his trial would have changed if trial counsel discussed all of his rights with him. Again, nothing in the record preponderates against the post-conviction court's finding that trial counsel discussed the Petitioner's rights with him. See Calvert, 342 S.W.3d at 485. The Petitioner has not established that trial counsel was ineffective in advising the Petitioner of his rights and is not entitled to relief.

**Failure to Prepare for Trial.** The Petitioner argues that trial counsel failed to appropriately investigate the Petitioner's case in preparation for trial. The Petitioner concedes that trial counsel testified he spent "well over five hours in preparation for trial" and "went over discovery, took notes, thought the case through, drafted questions, and drafted opening and closing arguments." Trial counsel also testified that he was as prepared as he could be for trial without the Petitioner's participation and that there were no witnesses he was unable to call, no evidence he was unable to present, and no cross-

examination he was unable to pursue. The Petitioner does not identify what more trial counsel should have done to prepare for trial adequately. The Petitioner has not established that trial counsel was deficient or that any alleged deficiency resulted in prejudice. He is not entitled to relief.

**Failure to Meaningfully Cross-Examine Witnesses.** The Petitioner next contends that trial counsel was ineffective for failing to meaningfully cross-examine Burrell and Anderson. He concedes that trial counsel testified at the post-conviction hearing that he cross-examined Burrell, but he questions whether the cross-examination "was meaningful and helped [the Petitioner] with his case[.]" Trial counsel testified that his cross-examination of Burrell attacked his credibility by establishing that Burrell was a "tax cheat" who had an income that he failed to report to the Internal Revenue Service or to the Social Security Administration. He also elicited from Anderson on cross-examination that she had been charged with a crime and highlighted that she and Burrell were "partners in crime." The post-conviction court found that trial counsel "did cross-examine [the S]tate's witnesses with a reasonable[,] tactical[,] or strategic purpose" and therefore did not provide ineffective assistance. The Petitioner does not assert how trial counsel should have cross-examined Burrell and Anderson differently. Trial counsel chose to focus his cross-examination of Burrell and Anderson on their lack of credibility rather than the robbery itself or their inconsistent statements, which the post-conviction court found to be reasonable. Further, the co-defendant's counsel questioned Burrell and Anderson about their inconsistent statements, and such inconsistencies were noted by this court on direct appeal. "[T]he severity and direction that a trial attorney cross-examines a witness is a matter of strategy, and as such, this Court must be highly deferential to trial attorneys' decisions." <u>Michael John Stitts v. State</u>, No. W2019-00867-CCA-R3-PC, 2020 WL 2563470, at *7 (Tenn. Crim. App. May 20, 2020), <u>perm. app. denied</u> (Tenn. Sept. 21, 2020) (citing <u>Goad</u>, 938 S.W.2d at 369). Trial counsel's decision to focus only on Burrell's and Anderson's credibility during cross-examination was reasoned and strategic and therefore not deficient. The Petitioner is not entitled to relief.

**Failure to Object to State's Opening Statement.** The Petitioner asserts that trial counsel was ineffective in failing to object to the State's opening statement. The Petitioner concedes that the issue was not raised at the post-conviction hearing and that trial counsel therefore did not testify regarding the issue. On direct appeal, this court determined that the Petitioner was not entitled to plain error relief based on the State's opening statement. <u>Gaines Richardson</u>, 2018 WL 4182317, at *6. The post-conviction court concluded that the Petitioner had not established that trial counsel was ineffective in failing to object to the opening statement because the issue was not addressed at the post-conviction hearing. The Petitioner presented no evidence that trial counsel's failure to object to the opening statement constituted ineffective assistance. "'The decisions of a trial attorney as to whether to object to opposing counsel's arguments are often primarily tactical

- 12 -

decisions.'" Richard Lloyd Odom v. State, No. W2015-01742-CCA-R3-PD, 2017 WL 4764908, at *36 (Tenn. Crim. App. Oct. 20, 2017) (quoting Derek T. Payne v. State, No. W2008-02784-CCA-R3-PC, 2010 WL 161493, at *15 (Tenn. Crim. App. Jan. 15, 2010)). "Accordingly, trial counsel must be given the opportunity to explain why they did not object to the allegedly prejudicial remarks." Richard Lloyd Odom, 2017 WL 4764908, at *36. "'Without testimony from trial counsel or some evidence indicating that [their] decision was not a tactical one, we cannot determine that trial counsel provided anything other than effective assistance of counsel.'" Id. (quoting State v. Leroy Sexton, No. M2004-03076-CCA-R3-CD, 2007 WL 92352, at *5 (Tenn. Crim. App. Jan. 12, 2007)). The Petitioner has failed to establish that trial counsel was deficient in failing to object to the State's opening statement or that any alleged deficiency resulted in prejudice. The Petitioner is not entitled to relief.

**Failure to Object During Trial.** The Petitioner contends that trial counsel was ineffective in failing to make any objections at trial. The post-conviction court found that trial counsel was not ineffective because he "had no belief that anything was objectionable during trial[.]" At the post-conviction hearing, trial counsel testified that it was not his practice to object "just for the sake of objecting" and that he would have made objections at trial if he thought there was a reason to do so. The Petitioner does not identify what objections trial counsel should have made at trial. As previously noted, the decision of when and whether to object at trial is a matter of strategy that is within trial counsel's discretion. Derek T. Payne, 2010 WL 161493, at *15. Trial counsel testified that he would have objected to anything "substantial[.]" Because the Petitioner has not shown that trial counsel's failure to object at trial was anything other than strategic, he has failed to establish that trial counsel performed deficiently or that any deficiency resulted in prejudice. The Petitioner is not entitled to relief.

**Cumulative Error.** The Petitioner also asserts that there "were several errors committed in the trial proceedings which makes the cumulative error doctrine applicable to [the Petitioner's] case." The cumulative error doctrine provides, in short, as follows:

> The cumulative error doctrine is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial.

State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010) (citations omitted). Because the Petitioner has not established that trial counsel was ineffective, we need not consider the cumulative effect of the alleged errors. Hester, 324 S.W.3d at 77 ("To warrant assessment under the

- 13 -

cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings."). The Petitioner is not entitled to relief.

**II. Sufficiency of the Evidence.** Finally, the Petitioner challenges the sufficiency of the evidence for his convictions at trial. However, as noted by the State, such an argument is inappropriate. This court determined on direct appeal that the evidence was sufficient to support the Petitioner's aggravated robbery convictions. Gaines Richardson, 2018 WL 4182317, at *3. This court has previously stated that sufficiency of the evidence is not cognizable in post-conviction proceedings. Cole v. State, 798 S.W.2d 261, 264 (Tenn. Crim. App. 1990) ("It has long been established that issues concerning the sufficiency of the evidence . . . are not cognizable in post-conviction proceedings."). Moreover, our supreme court has stated that "the plain error rule, which would otherwise permit an appellate court to address the issue sua sponte, may not be applied in post-conviction proceedings to grounds that would otherwise be deemed waived or previously determined." Holland v. State, 610 S.W.3d 450, 458 (Tenn. 2020) (quoting Grindstaff v. State, 297 S.W.3d 208, 219 (Tenn. 2009)) (internal quotation marks omitted). The Petitioner is not entitled to relief.

## CONCLUSION

Because the Petitioner has failed to establish that he received ineffective assistance of counsel, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE

- 14 -